UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
URBAN INTELLIGENCE INC.,

          Plaintiff,

    v.

SPRING SCAFFOLDING LLC,

          Defendant.
-------------------------------------------------------------x

**MEMORANDUM AND ORDER**
23-CV-1789 (RPK) (PK)

RACHEL P. KOVNER, United States District Judge:

    Plaintiff Urban Intelligence Inc., known as Urban Umbrella, brings this action against defendant Spring Scaffolding LLC, alleging claims of trade dress infringement under the Lanham Act, 15 U.S.C. § 1125(a), and trade dress infringement and unfair competition under New York common law. Spring Scaffolding moves to dismiss the action for failure to state a claim upon which relief may be granted. Spring Scaffolding's motion is denied.

## BACKGROUND

    The following facts are taken from the second amended complaint and assumed true for the purposes of this order.

    Plaintiff Urban Umbrella is a Delaware corporation that "designs, manufactures, sells, rents and installs sidewalk bridges, scaffolding, and sheds" in New York City and elsewhere. Second Am. Compl. ("SAC") ¶¶ 2, 9 (Dkt. #39). Urban Umbrella's sidewalk scaffolding design is "significantly different from traditional sidewalk scaffolding." *Id.* ¶ 13. The distinctive elements of the design include "(a) sidewalk scaffolding with no cross bracing; (b) umbrella-like arches/braces; (c) use of white for the scaffolding; and (d) the placement and proportion of these elements in relation to one another within the structure." *Id.* ¶ 14 (footnote omitted). Urban Umbrella claims that this "distinct combination of source-identifying elements" constitutes a

1

protectable trade dress. *Ibid.* The complaint includes photographs of the Urban Umbrella design:



*Id.* ¶ 15.

In 2010, the Urban Umbrella design won the urbanSHED Design Competition, an international competition organized and hosted by the New York City Department of Buildings ("DOB") "for the purpose of creating a safe, attractive, and pedestrian conscious alternative to traditional sidewalk scaffolding." *Id.* ¶ 10. In December 2011, the Mayor of New York issued a press release "highlighting the uniqueness and safety features of the Urban Umbrella design." *Id.* ¶ 12. In or about 2022, the New York City Building Code was updated "to recognize the unique design of the Urban Umbrella System, particularly its white color." *Id.* ¶ 19. While the Building Code generally requires sidewalk sheds to be "hunter green or metallic gray," it includes an exception allowing "[s]idewalk sheds that are of a model whose prototype won a design competition recognized by the city" to be "white in color." *Ibid.* (quoting N.Y.C. Building Code §§ 3307.6.4.11, 3307.7.9). The Urban Umbrella scaffolding design "is the only sidewalk shed whose prototype won a design competition recognized by New York City." *Id.* ¶ 20.

In addition to winning the urbanSHED competition, the Urban Umbrella design "has received widespread acclaim," including unsolicited media mentions. *Id.* ¶ 21; *see also id.* ¶¶ 22, 26. Urban Umbrella has spent approximately $150,000 annually in marketing and promoting the design, and it has "sold, rented, and installed a significant number of sidewalk sheds" bearing the design in multiple U.S. states and Canada. *Id.* ¶ 25.

Defendant Spring Scaffolding is a New York limited liability company also "in the business of renting and installing sidewalk bridges, scaffolding, and sheds" in New York City and elsewhere. *Id.* ¶¶ 3, 29. Urban Umbrella and Spring Scaffolding are direct competitors. *Id.* ¶ 30. Urban Umbrella alleges that in or around 2022, Spring Scaffolding began "making, advertising, offering for sale, selling and installing sidewalk sheds that infringed the Urban Umbrella Trade Dress," *id.* ¶ 32, including in seven locations throughout New York City, *id.* ¶ 34. According to Urban Umbrella, the alleged infringement "is intentional and calculated to confuse the relevant purchasing public." *Id.* ¶ 36. The DOB has issued over thirty citations to Spring Scaffolding for violating the Building Code by installing the allegedly infringing sheds. *Id.* ¶ 39.

In 2023, after having sent several cease-and-desist letters, *id.* ¶¶ 40–42, Urban Intelligence brought this action against Spring Scaffolding. The operative complaint alleges trade dress infringement under the Lanham Act, 15 U.S.C. § 1125(a), *id.* ¶¶ 43–53, as well as trade dress infringement and unfair competition under New York common law, *id.* ¶¶ 54–62.

Spring Scaffolding has moved to dismiss the complaint for failure to state a claim. *See generally* Mem. of L. in Supp. of Def.'s Mot. to Dismiss ("Mot. to Dismiss") (Dkt. #57-1).

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." To avoid dismissal on

3

that basis, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ibid.* (discussing Fed. R. Civ. P. 8). The facial "plausibility standard is not akin to a probability requirement," but it requires a plaintiff to allege sufficient facts to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ibid.* (quotation marks omitted) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007)). "A well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof [of the facts alleged] is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (quotation marks omitted).

In reviewing a motion to dismiss, a court may consider only (i) the complaint itself, (ii) documents attached to the complaint or incorporated by reference, (iii) documents the plaintiff both relied on and knew of when bringing suit, and (iv) matters in the public record which are properly subject to judicial notice. *See, e.g.*, *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004); *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999). On a motion to dismiss, the court must accept all facts alleged in a complaint as true. *Iqbal*, 556 U.S. at 678. The court, however, is not obligated to adopt "mere conclusory statements" or "threadbare recitals of the elements of a cause of action" that are not "supported by factual allegations." *Id.* at 678–79.

## DISCUSSION

Spring Scaffolding's motion to dismiss Urban Umbrella's trade dress claims is denied.

A product's "trade dress" is "essentially [its] total image and overall appearance, as defined by its overall composition and design, including size, shape, color, texture, and graphics." *Jeffrey*

4

*Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 31 (2d Cir. 1995) (citations omitted). Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and New York common law each extend protection to a product's trade dress. To plead a claim of trade dress infringement involving product design under the Lanham Act, a plaintiff must "(1) offer a precise expression of the character and scope of the claimed trade dress; (2) allege that the claimed trade dress is non-functional; (3) allege that the claimed trade dress has secondary meaning; and (4) allege that there is a likelihood of confusion between the plaintiff's good and the defendant's." *Classic Touch Décor, Inc. v. Michael Aram, Inc.*, No. 15-CV-453 (NGG) (RLM), 2015 WL 6442394, at *3 (E.D.N.Y. Oct. 23, 2015) (citation omitted). An unfair competition claim based on trade dress infringement under New York common law "is identical to a Lanham Act claim, save for the additional requirement that plaintiff show defendant's bad faith." *Carson Optical, Inc. v. Prym Consumer USA, Inc.*, 11 F. Supp. 3d 317, 336 (E.D.N.Y. 2014) (citation omitted).

Spring Scaffolding argues that Urban Umbrella has failed to identify its claimed trade dress with precision, and that it has failed to allege that the trade dress is non-functional and has a secondary meaning. As discussed below, Spring Scaffolding's arguments are unpersuasive and Urban Umbrella has adequately alleged those elements of a trade dress claim.

### I. Precision

A plaintiff alleging trade dress infringement must "offer a precise expression of the character and scope of the claimed trade dress, and articulate the elements of their product design with specificity to be afforded trade dress protection." *Bubble Genius LLC v. Smith*, 239 F. Supp. 3d 586, 593 (E.D.N.Y. 2017) (citations and quotation marks omitted). The plaintiff must articulate "not just *which* features are distinctive, but also *how* they are distinctive." *Shevy Custom Wigs, Inc. v. Aggie Wigs*, No. 06-CV-1657 (JG), 2006 WL 3335008, at *5 (E.D.N.Y. Nov. 17, 2006).

5

Urban Umbrella's description of its trade dress is sufficiently precise. Urban Umbrella alleges its trade dress consists of "a distinct combination of source-identifying elements" that include "(a) sidewalk scaffolding with no cross bracing; (b) umbrella-like arches/braces; (c) use of white for the scaffolding; and (d) the placement and proportion of these elements in relation to one another within the structure." SAC ¶ 14 (footnote omitted). Elsewhere in the complaint, Urban Umbrella elaborates on the structural relationship between the umbrella-like arches/braces and lack of cross-bracing, and why it is distinctive "when compared with traditional scaffolding." *Id.* ¶ 22. Quoting a Bloomberg article, the complaint describes, "[i]nstead of a cage of steel bars, Urban Umbrella scaffolding has no cross-bracing—the roof is held up by slender steel columns braced by arches near the top—and its bright white rather than the hunter-green hue every other shed is mandated by law to adopt." *Ibid.*

Contrary to Spring Scaffolding's arguments, this characterization is not "pitched at an improper level of generality," *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 381 (2d Cir. 1997), such as in cases where plaintiffs "seek[] protection for [an] idea . . . as opposed to any particular design configuration employing these elements," *Elements/Jill Schwartz, Inc. v. Gloriosa Co.*, No. 01-CV-904 (DLC), 2002 WL 1492197, at *6 (S.D.N.Y. July 15, 2002), or where plaintiffs offer "sweeping 'descriptions' . . . denot[ing] categories of features, not the features themselves," *Shevy Custom Wigs, Inc.* 2006 WL 3335008, at *5; *see, e.g.*, *Tooker v. Whitworth*, 212 F. Supp. 3d 429, 434 (S.D.N.Y. 2016) (precision requirement not met where complaint stated that trade dress for hats "includes the size, shape and color of the product and its packaging," and that the "hats 'had unique elements of style, shape, angle, height, width, and/or slant,' but provide[d] no further detail"). Rather, Urban Umbrella has "recited in specific detail the geometric and aesthetic characteristics of its trade dress in a manner that is sufficiently precise." *Focus*

6

*Prods. Grp. Int'l, LLC v. Kartri Sales Co.*, 454 F. Supp. 3d 229, 249 (S.D.N.Y. 2020) (brackets and quotation marks omitted); *see, e.g.*, *Shandong Shinho Food Indus. Co. v. May Flower Int'l, Inc.*, 521 F. Supp. 3d 222, 256 (E.D.N.Y. 2021) ("Plaintiff's description of its trade dress is . . . 'quite detailed' because it describes the various colors included on the container, the imaging on the container, the shape of the container, and stripes running across the product." (citation omitted)); *Wine Enthusiast, Inc. v. Vinotemp Int'l Corp.*, 317 F. Supp. 3d 795, 798–99 (S.D.N.Y. 2018) (plaintiff sufficiently described trade dress for wine storage units as including "a glass front," "individual shelves inside the units holding the bottles in a horizontal position, with the bases of the bottles facing outward," and shelves with a "black front . . . high enough to cover most of the bottom half of each bottle," altogether "giv[ing] the impression the bottles are 'floating' within the storage unit").

Apart from challenging the level of detail with which Urban Umbrella describes its trade dress, Spring Scaffolding suggests that the description is incomplete. It argues that Urban Umbrella has only identified some elements that the asserted trade dress "include[s]," and "not that these elements combined are the entirety of the trade dress." Mot. to Dismiss 6. This cramped reading of the complaint puts too much significance in the word choice "include" and draws inferences against the plaintiff that would be improper at the motion-to-dismiss stage.

## II. Functionality

"[T]rade dress protection may not be claimed for product features that are functional." *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 29 (2001) (citing 15 U.S.C. § 1125(a)(3)). Product features can be functional in either a utilitarian or aesthetic sense. A product feature has utilitarian functionality if (1) it is "essential to the use or purpose of the article" or (2) it "affects the cost or quality of the article." *Christian Louboutin S.A. v. Yves Saint Laurent*

7

*Am. Holding, Inc.*, 696 F.3d 206, 219 (2d Cir. 2012) (quoting *Inwood Lab'ys, Inc. v. Ives Lab'ys, Inc.*, 456 U.S. 844, 850 n.10 (1982)).  For example, "the pillow shape of a shredded wheat biscuit" has been "deemed functional because the cost of the cereal would be increased and its quality lessened by any other form."  *Id.* at 219 n.14 (citing *Kellogg Co. v. Nat'l Biscuit Co.*, 305 U.S. 111, 122 (1938)).

In cases where "the aesthetic design of a product is itself the mark for which protection is sought," the design may be aesthetically functional even if it does not have any utilitarian "bearing on the use or purpose of the product or its cost or quality."  *Id.* at 219–20 (emphasis and brackets omitted) (first citing *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 165 (1995); and then citing *TrafFix Devices, Inc.*, 532 U.S. at 33).  A mark is aesthetically functional "where protection of the mark *significantly* undermines competitors' ability to compete in the relevant market" by "limiting the range of adequate alternative designs."  *Id.* at 222 (citations omitted) (emphasis in original).  The fact that the primary purpose of a design is aesthetic does not necessarily mean that the design is aesthetically functional.  For instance, the Second Circuit rejected an argument that two sweater designs with "fall motifs" of squirrels and leaves were aesthetically functional, reasoning that although the designs' "primary purpose" was aesthetic, the defendant "adduced no evidence whatsoever that the number of designs available for 'fall motif' sweaters is limited, and that consequently extension of trade dress protection . . . would restrict [defendant's] ability to produce alternative competitive designs."  *Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)*, 71 F.3d 996, 1006 (2d Cir. 1995).

Urban Umbrella has pleaded enough facts to plausibly allege non-functionality at the motion-to-dismiss stage.  Urban Umbrella alleges that its scaffolding design consists of a distinct combination of elements, including umbrella-like arches, the use of white color, and the lack of

8

cross bracing. SAC ¶ 14. It alleges that those elements are "not essential to the use or purpose of the sidewalk scaffolding" and "do[] not reduce the cost or improve the performance of the sidewalk scaffolding." *Id.* ¶ 18. Further, extending protection to the trade dress would not "put competitors at any significant non-reputation-related disadvantage" as "[c]ompetitors have available a multitude of alternative sidewalk scaffolding designs that they could use." *Ibid.* Spring Scaffolding may, through discovery, ultimately prove otherwise. But "functionality is a question of fact that makes dismissal at the pleading stage inappropriate." *Deckers Outdoor Corp. v. Next Step Grp., Inc.*, No. 23-CV-2545 (ALC), 2024 WL 3459609, at *4 (S.D.N.Y. July 18, 2024). For now, it suffices that a scaffolding design of white umbrella-like arches without cross bracing is plausibly non-functional.

Spring Scaffolding primarily challenges Urban Umbrella's claim of non-functionality "by breaking [Urban Umbrella's] trade dress into its individual elements and then attacking certain of those elements as functional." *LeSportsac, Inc. v. Kmart Corp.*, 754 F.2d 71, 76 (2d Cir. 1985). It argues that the umbrella-like arches are functional because arches perform the utilitarian function of providing structural support. Mot. to Dismiss 13–14. And it argues that white color for scaffolding is aesthetically functional because extending trade dress protection to white scaffolding would significantly undermine competitors' ability to compete in the scaffolding market. *Id.* at 14–15. This fragmented analysis is unpersuasive because it "misconceives the scope of the appropriate inquiry." *LeSportsac, Inc.*, 754 F.2d at 76. "When evaluating functionality, courts in this Circuit examine whether the design as a whole is functional, not whether the individual elements that make up the design are functional." *Luv N' Care, Ltd. v. Walgreen Co.*, 695 F. Supp. 2d 125, 133 (S.D.N.Y. 2010); *see LeSportsac, Inc.*, 754 F.2d at 76 (despite functionality of individual elements of a sports bag, "the particular combination and arrangement of design

9

elements" that identified a mark were non-functional "when viewed in [their] entirety"); *Cartier, Inc. v. Sardell Jewelry, Inc.*, 294 F. App'x 615, 620–21 (2d Cir. 2008) (affirming district court's determination that although "the most prominent features of the Cartier design, the roman numerals and its square shape, are purely functional," "it was improper for defendants to break the trade dress down into specific elements and call them functional, because plaintiffs' claim is that the combination and arrangement of those design elements comprise the trade dress at issue").

Spring Scaffolding also argues that the Urban Umbrella design is functional because Urban Umbrella "has filed an application for a utility patent on its sidewalk shed." Mot. to Dismiss 14 (emphasis omitted).[*] In *TrafFix*, the Supreme Court explained that "[a] utility patent is strong evidence that the features therein claimed are functional." *TrafFix Devices, Inc.*, 532 U.S. at 29. However, that "is because an actually-issued patent requires a conclusion by the [U.S. Patent and Trademark Office] that a device was sufficiently useful and inventive to merit granting the patentee a monopoly." *Telebrands Corp. v. Del Lab'ys, Inc.*, 719 F. Supp. 2d 283, 300 (S.D.N.Y. 2010). Here, no such conclusion has been made, as Urban Umbrella has only *applied* for a utility patent. Even if Urban Umbrella's application had been granted, there are several other holes in Spring Scaffolding's argument. The existence of a utility patent goes to the functionality of "the features *therein claimed*," *TrafFix Devices, Inc.*, 532 U.S. at 29 (emphasis added), and here, Spring Scaffolding has not asserted that all the elements of the asserted trade dress—such as the color white—were also highlighted in the patent application. *See Rubik's Brand Ltd. v. Flambeau, Inc.*, No. 17-CV-6559 (PGG) (KHP), 2021 WL 363704, at *8 (S.D.N.Y. Jan. 31, 2021) ("*Traffix* is distinguishable from the case at bar because [plaintiff's] prior utility patents do not disclose the

---

[*] While Urban Umbrella's patent application is not included in or incorporated by reference into the complaint, "[i]t is well established that the Court may properly take judicial notice of official records of the United States Patent and Trademark Office." *Nespresso USA, Inc. v. Peet's Coffee, Inc.*, No. 22-CV-2209 (CM), 2023 WL 374980, at *4 (S.D.N.Y. Jan. 24, 2023) (citation, quotation marks, and brackets omitted).

10

specific color combination of the 3x3 Cube Design, which encompasses the central features of the trade dress at issue in this case."). Moreover, "arbitrary, incidental, or ornamental aspects of features of a product found in [] patent claims" that "do not serve a purpose within the terms of the utility patent" may qualify for trade dress protection. *TrafFix Devices, Inc.*, 532 U.S. at 34. Ultimately, the extent to which the trade dress and patent application overlap, and the evidentiary value of representations in the patent application, are questions best left for a later stage in this litigation.

**III.  Secondary Meaning**

A plaintiff seeking trade dress protection for an unregistered product design must show that the design has acquired "a secondary meaning in the marketplace, which occurs when, 'in the minds of the public, the primary significance of a product feature is to identify the source of the product rather than the product itself.'" *GeigTech E. Bay LLC v. Lutron Elecs. Co.*, 352 F. Supp. 3d 265, 275 (S.D.N.Y. 2018) (brackets omitted) (quoting *Inwood Lab'ys, Inc.*, 456 U.S. at 851 n.11). "Factors that are relevant in determining secondary meaning include (1) advertising expenditures, (2) consumer studies linking the mark to a source, (3) unsolicited media coverage of the product, (4) sales success, (5) attempts to plagiarize the mark, and, (6) length and exclusivity of the mark's use." *Christian Louboutin S.A.*, 696 F.3d at 226 (citation omitted). "[N]o single factor is determinative, and every element need not be proved." *Thompson Med. Co. v. Pfizer Inc.*, 753 F.2d 208, 217 (2d Cir. 1985) (citation and quotation marks omitted). "[W]hether a mark or title has acquired secondary meaning is always a substantial question of fact." *GeigTech E. Bay LLC*, 352 F. Supp. 3d at 282 (citation and quotation marks omitted). It is "primarily an empirical inquiry" and involves "vigorous evidentiary requirements." *Ibid.* (citations omitted).

"Accordingly, none of these factors is generally amenable to determination on a motion to dismiss." *Ibid.*

Urban Umbrella has adequately pleaded secondary meaning, as it has alleged facts corresponding to at least four of the factors enumerated above. First, as to advertising expenditures, Urban Umbrella has spent "approximately $150,000 a year over the last three (3) years marketing and promoting the Urban Umbrella Trade Dress." SAC ¶ 23. Second, as to unsolicited media coverage, the Urban Umbrella trade dress has received "numerous unsolicited media mentions in publications throughout the United States including, among others, Crains New York Business (multiple times), The New York Times, The New York Post (multiple times), Bloomberg.com, The Real Deal, Real Estate Weekly, CoStar, Curbed NY, and Women's Wear Daily, as well as on the Real Deal's YouTube channel." *Id.* ¶ 21. The Urban Umbrella design also gained publicity when it won the urbanSHED Design Competition, prompting the New York City Mayor to issue "a press release highlighting the uniqueness and safety features of the Urban Umbrella design." *Id.* ¶ 12. Third, as to sales success, Urban Umbrella has "sold, rented, and installed a significant number of sidewalk sheds bearing the Urban Umbrella Trade Dress" across multiple U.S. states and Canada and "deriv[ed] substantial revenue therefrom." *Id.* ¶ 25. Finally, as to length and exclusivity of use, Urban Umbrella has alleged facts indicating that its unique scaffolding design dates back to 2010 if not earlier, and that it is the only scaffolding company authorized to use such a design in New York City. *See, e.g.*, *id.* ¶ 10 (won design competition in 2010); *id.* ¶¶ 19–20 (only sidewalk sheds that won a design competition recognized by the city, and thus in practice only Urban Umbrella scaffolding, may be white).

Spring Scaffolding's challenges to these portions of the complaint are premature. At the pleading stage, a plaintiff need not, for example, specify "how its advertising money was spent,"

*GeigTech E. Bay LLC*, 352 F. Supp. 3d at 282, or "present[] [any] actual sales figures," *id.* at 284. Spring Scaffolding cites cases such as *Wonderful Co. v. Nut Cravings Inc.*, No. 21-CV-3960 (MKV), 2022 WL 4585344, at *3 (S.D.N.Y. Sept. 29, 2022), but there, the complaint only included a single "vague allegation" for two of the factors and was "devoid of allegations" relating to the others. As described above, much more is alleged here. And Spring Scaffolding's attempts to proffer evidence to contravene the facts in the complaint—such as Google Maps images of various sidewalk sheds in New York City, *see* Def.'s Req. for Judicial Notice 3–4 (Dkt. #57-2)—are not appropriate for a motion to dismiss. Instead, arguments that are largely "evidentiary in nature," are "properly reviewed on motion for summary judgment." *GeigTech E. Bay LLC*, 352 F. Supp. 3d at 282.

## CONCLUSION

For the reasons set forth above, Spring Scaffolding's motion to dismiss is denied.

SO ORDERED.

                                         */s/ Rachel Kovner*
                                         RACHEL P. KOVNER
                                         United States District Judge

Dated: September 30, 2024
       Brooklyn, New York