UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x

URBAN INTELLIGENCE INC.

              Plaintiff,

       v.

SPRING SCAFFOLDING LLC,

              Defendant.

-------------------------------------------------------x

**MEMORANDUM AND ORDER**
23-CV-1789 (RPK) (PK)

RACHEL P. KOVNER, United States District Judge:

Urban Intelligence Inc. brought this action against Spring Scaffolding LLC, alleging trade dress infringement under the Lanham Act and New York common law. Its original complaint also contained a claim for patent infringement, which it dropped over the course of the suit. Spring Scaffolding, in turn, brings twelve counterclaims against Urban Intelligence. Seven are at issue here: a claim for tortious interference with prospective economic advantage (Amended Counterclaim I), and six declaratory judgment claims related to three design patents held by Urban Intelligence (Amended Counterclaims VII–XII). Urban Intelligence moves to dismiss (1) the counterclaims based on the design patents as moot, in light of its tendering Spring Scaffolding a covenant not to sue; and (2) the claim for tortious interference for failure to state a claim. For the reasons that follow, Urban Intelligence's motion is granted.

## BACKGROUND

Urban Intelligence Inc. and Spring Scaffolding LLC both design, manufacture, and sell sidewalk sheds and scaffolding to customers in the New York City market. Am. Answer & Counterclaims ¶¶ 72–76 (Dkt. #78). Urban Intelligence alleges that its competition-winning

design significantly differs from traditional sidewalk scaffolding, with distinctive features including a lack of cross bracing, umbrella-like arches, and white color. *See* Second Am. Compl. ("SAC") ¶¶ 10–11, 13–14 (Dkt. #39). Urban Intelligence holds three design patents related to its sidewalk sheds: patent numbers D958,410, D958,411, and D958,412. *See* Am. Answer & Counterclaims ¶¶ 83, 105. Urban Intelligence initiated this suit against Spring Scaffolding in March 2023, originally claiming that Spring Scaffolding's competing sidewalk sheds infringed Urban Intelligence's trade dress in violation of the Lanham Act and New York common law and that Spring Scaffolding had infringed one of the patents held by Urban Intelligence. *See generally* Compl. (Dkt. #1); First Am. Compl. (Dkt. #18).

Spring Scaffolding alleges that, between October 2022 and September 2023, Urban Intelligence sent "threatening letters" to many of Spring Scaffolding's clients, asserting that Spring Scaffolding's sidewalk sheds violated Urban Intelligence's trade dress and patents and threatening litigation. Am. Answer & Counterclaims ¶¶ 91–93. At some point prior to June 20, 2023, Urban Intelligence also published an industry newsletter accusing Spring Scaffolding of "engag[ing] in the illegal installation of white scaffolding, deliberately copying Urban Umbrella's patented design elements." *Id.* ¶¶ 94–96.

On June 26, 2023, Spring Scaffolding moved for a pre-motion conference in advance of an anticipated motion to dismiss Urban Intelligence's claims, including its patent infringement claim. *See* Spring Scaffolding Mot. for a Pre-Mot. Conf. (Dkt. #21). On August 11, 2023, Urban Intelligence notified Spring Scaffolding that it planned to withdraw its claim for patent infringement. *See* Decl. of Serge Krimnus ¶ 7 (Dkt. #29). On August 31, 2023, with leave of court, Urban Intelligence then filed a second amended complaint that omitted the patent

infringement claim. *See* SAC. The Court denied Spring Scaffolding's motion to dismiss the remaining trade dress infringement claims. *See* Sept. 30, 2024 Mem. & Order (Dkt. #130).

On September 29, 2023, Spring Scaffolding answered the second amended complaint and brought counterclaims. *See* Answer & Counterclaims (Dkt. #60). Six related to the patents held by Urban Intelligence: one claim seeking a declaration of non-infringement and one claim seeking a declaration of invalidity and unenforceability for each of the three patents at issue. *See id.* ¶¶ 188–236. In response, on October 25, 2023, Urban Intelligence tendered to Spring Scaffolding a "Covenant Not to Sue," which unilaterally agreed to refrain from making any claims for patent infringement against Spring Scaffolding based on the three patents challenged by Spring Scaffolding. *See* Covenant Not to Sue (Dkt. #100-1). Urban Intelligence contended that this covenant mooted the six counterclaims related to its patents. *See* Urban Intelligence Mot. for a Pre-Mot. Conf. 1 (Dkt. #74).

On January 9, 2024, with leave of court, Spring Scaffolding filed the operative amended answer and counterclaims. *See* Am. Answer & Counterclaims. In total, Spring Scaffolding brings twelve counterclaims—the seven at issue in this order are Spring Scaffolding's claim for tortious interference with prospective economic advantage, based on the infringement allegations in the letters sent by Urban Intelligence to Spring Scaffolding's customers and the industry newsletter (Amended Counterclaim I), and the same six claims related to the Urban Intelligence's three patents as pleaded in its original set of counterclaims (Amended Counterclaims VII–XII). *See id.* ¶¶ 115–132, 194–242.

The Court then set a briefing schedule for Urban Intelligence's motion to dismiss Spring Scaffolding's tortious interference and patent-related counterclaims. *See* Feb. 5, 2024 Order. After Urban Intelligence served its motion to dismiss, *see* Urban Intelligence Ltr. (Dkt. #91), and

Spring Scaffolding served its opposition brief, *see* Spring Scaffolding Ltr. (Dkt. #97), on April 10, 2024, concurrently with the service of its reply brief, Urban Intelligence tendered Spring Scaffolding an amended version of its covenant not to sue that addressed the purported deficiencies identified by Spring Scaffolding's opposition, *see* Am. Covenant Not to Sue (Dkt. #103-1). Urban Intelligence also provided alongside its reply brief, for the first time, examples of the letters sent by Urban Intelligence to some of Spring Scaffolding's customers. *See* Example Urban Intelligence Customer Ltrs. (Dkt. #103-2). Because of these new matters, the Court permitted Spring Scaffolding to file a short sur-reply. *See* Apr. 16, 2024 Order. Spring Scaffolding attached to its sur-reply an additional letter sent by Urban Intelligence to a different Spring Scaffolding customer. *See* Brookfield Props. Cease-and-Desist Ltr. (Dkt. #107-2).

To summarize, Urban Intelligence currently moves to dismiss (1) the counterclaims seeking declarations related to Urban Intelligence's design patents as moot, in light of its tendering Spring Scaffolding the amended covenant not to sue based on the patents; and (2) the claim for tortious interference with prospective economic advantage for failure to state a claim. *See* Urban Intelligence Mem. of L. in Supp. of Mot. to Dismiss Counterclaims (Dkt. #101).

## LEGAL STANDARD

### I.    Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) permits a defendant to move to dismiss a complaint for "lack of subject-matter jurisdiction." "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Lyons v. Litton Loan Servicing LP*, 158 F. Supp. 3d 211, 218 (S.D.N.Y. 2016) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). When considering a motion to dismiss under Rule 12(b)(1), a court "must take all uncontroverted

facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014). But "[w]here jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits." *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir.2003) (citation omitted). "In that case, the party asserting subject matter jurisdiction 'has the burden of proving by a preponderance of the evidence that it exists.'" *Tandon*, 752 F.3d at 243 (quoting *Makarova*, 201 F.3d at 113).

## II.    Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) directs a court to dismiss a complaint that "fail[s] to state a claim upon which relief can be granted." To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The facial "plausibility standard is not akin to a probability requirement," but it requires a plaintiff to allege sufficient facts to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ibid*. (quotations omitted) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007)). "A well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof [of the facts alleged] is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (quotations omitted).

At the motion-to-dismiss stage, a court may consider only (i) the complaint itself, (ii) documents either attached to the complaint or incorporated in it by reference, (iii) documents the plaintiff relied on and knew of when bringing suit, and (iv) matters in the public record that are subject to judicial notice. *See, e.g.*, *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004); *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999). When reviewing the complaint on a motion to dismiss, the

court must accept all facts alleged in a complaint as true. *Iqbal*, 556 U.S. at 678. The court, however, is not obligated to adopt "mere conclusory statements" or "threadbare recitals of the elements of a cause of action" that are not "supported by factual allegations." *Id*. at 678–79.

## DISCUSSION

Urban Intelligence's motion to dismiss Spring Scaffolding's counterclaims seeking declaratory judgments related to Urban Intelligence's design patents and Spring Scaffolding's tortious interference with prospective economic advantage counterclaim is granted.

### I.   Patent-Related Counterclaims

Spring Scaffolding's counterclaims seeking declaratory judgments related to the three design patents held by Urban Intelligence are dismissed as moot.

Article III of the U.S. Constitution limits federal courts' subject-matter jurisdiction to "live cases and controversies." *ABC, Inc. v. Stewart*, 360 F.3d 90, 97 (2d Cir. 2004). "At all stages of litigation, a plaintiff must maintain a personal interest in the dispute." *Uzuegbunam v. Preczewski*, 592 U.S. 279, 282 (2021). "The doctrine of standing generally assesses whether that interest exists at the outset, while the doctrine of mootness considers whether it exists throughout the proceedings." *Ibid.* "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013).

"As the Supreme Court has recognized [in *Already, LLC v. Nike, Inc.*], a covenant not to sue a declaratory judgment plaintiff can moot a controversy between the parties." *Organic Seed Growers & Trade Ass'n v. Monsanto Co.*, 718 F.3d 1350, 1357 (Fed. Cir. 2013). "[I]n intellectual property cases, when a declaratory judgment plaintiff seeks a declaration that an asserted right is invalid or otherwise unenforceable and the declaratory defendant provides the plaintiff with a

covenant not to sue for infringement of that right, that covenant can 'extinguish[] any current or future case or controversy between the parties,'" thus rendering the action moot. *Velvet Underground v. Andy Warhol Found. for the Visual Arts, Inc.*, 890 F. Supp. 2d 398, 404 (S.D.N.Y. 2012) (quoting *Dow Jones & Co. v. Ablaise Ltd.*, 606 F.3d 1338, 1348 (Fed. Cir. 2010)). "Not all covenants [not] to sue, however, will moot a controversy." *Lifeguard Licensing Corp. v. Kozak*, 371 F. Supp. 3d 114, 124 (S.D.N.Y. 2019). This is because, under the doctrine of voluntary cessation, "a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000). "Otherwise, a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends." *Already, LLC*, 568 U.S. at 91.

When assessing whether a covenant not to sue moots a declaratory judgment action in an intellectual property case, courts focus on "(1) the language of the covenant, (2) whether the covenant covers future, as well as past, activity and products, and (3) evidence of intention or lack of intention, on the part of the party asserting jurisdiction, to engage in new activity or to develop new potentially infringing products that arguably are not covered by the covenant." *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 96 (2d Cir. 2011) (footnote omitted), *aff'd*, 568 U.S. 85. After analyzing these factors, if the defendant has met its "burden to show that it 'could not reasonably be expected' to resume its enforcement efforts against" the plaintiff, the case is moot. *Already, LLC*, 568 U.S. at 92 (citation omitted).

Urban Intelligence's amended covenant not to sue reads as follows:

Urban Intelligence Inc. . . . hereby, on behalf of itself and its successors, assigns, agents, customers, and representatives, unconditionally and irrevocably covenants

and agrees to refrain from making any claim(s) or demand(s), and not to bring, file, claim, sue or cause, assist or permit to be brought, filed or claimed any action, cause of action or proceeding against Spring Scaffolding LLC, or any of its parents, subsidiaries, divisions, related companies, affiliated companies, licensees, independent contract manufacturers, assigns, and/or other related business entities, as well as any of their predecessors, successors, directors, officers, members, employees, agents, distributors, attorneys, representatives, and employees of such entities, and all customers of each of the foregoing (whether direct or indirect), on account of any possible cause of action based on or involving design patent infringement relating to the Design Patents for the past, present and future use, manufacture, sale, and offer for sale of scaffolding and sheds that currently exist and/or previously existed and have been used, manufactured, and sold by Spring Scaffolding LLC as of [April 10, 2024] and any scaffolding and sheds created, manufactured, or sold by Spring Scaffolding LLC after October 25, 2023.

Am. Covenant Not to Sue.

This covenant is similar in all relevant respects to the one blessed by the Supreme Court in *Already, LLC*. (In fact, most of the relevant language is identical.) Like the covenant in *Already, LLC*, Urban Intelligence's covenant is "unconditional and irrevocable," covers "any *possible* cause of action" related to the design patents, prohibits Urban Intelligence "from making any claim *or* any demand" in addition to filing suits, and "reaches beyond [Spring Scaffolding] to protect [Spring Scaffolding's] distributors and customers." *See* 568 U.S. at 93 (emphases original). And it covers all past and future scaffolding and sheds that are, were, or will be sold by Spring Scaffolding. "[I]t is hard to imagine a scenario that would potentially infringe [Urban Intelligence's patents] and yet not fall under the Covenant." *Id.* at 94 (citation omitted).

Spring Scaffolding disagrees, arguing that there is an ambiguity as to the time period covered by the covenant. Because the amended covenant purports to cover any sidewalk sheds sold by Spring Scaffolding before April 10, 2024 and any sheds sold after October 25, 2023, Spring Scaffolding argues that the covenant "can reasonably be construed as covering only those sheds created, manufactured, or sold by Defendant between October 25, 2023 and April 10, 2024." Spring Scaffolding Sur-Reply 3–4 (Dkt. #107). But these dates are merely an artifact of the

procedural history of this case; they do not create any ambiguity as to the actual operation of the covenant. The Court trusts that any reader checking its work with the help of a calendar and a Venn diagram will agree that the union of the sets "all sheds sold before April 10, 2024" and "all sheds sold after October 25, 2023" covers all sheds sold in all of time, in both directions. Further, Urban Intelligence has repeatedly represented to the Court that its covenant covers all sheds past, present, and future, *see, e.g.*, Urban Intelligence Reply in Supp. of Mot. to Dismiss 3 (Dkt. #104); Urban Intelligence Resp. to Spring Scaffolding Mot. to File Sur-Reply 2 (Dkt. #106), thereby raising the specter of estoppel should it attempt to assert otherwise down the line. *See Already, LLC*, 568 U.S. at 94.[1]

Accordingly, because Urban Intelligence has successfully demonstrated "that the covenant encompasses all of its allegedly unlawful conduct" and because Spring Scaffolding has failed to identify any "activities not covered by the covenant" but potentially infringing of the patents that it might engage in, Spring Scaffolding's counterclaims seeking declaratory judgments related to Urban Intelligence's design patents are dismissed as moot. *Ibid.*

## II.    Tortious Interference Claim

Spring Scaffolding's counterclaim for tortious interference with prospective economic advantage is dismissed for failure to state a claim.

Under New York law, to state a claim for tortious interference with prospective economic advantage (also known as "tortious interference with a business relationship"), a plaintiff must allege that "(1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest,

---

[1] Spring Scaffolding had also challenged Urban Intelligence's original covenant on the ground that it was issued to "Spring Scaffolding, Inc." rather than "Spring Scaffolding LLC." *See* Spring Scaffolding Opp'n to Mot. to Dismiss 5–6 (Dkt. #102). Whether or not this discrepancy would have rendered the original covenant ambiguous, the amended covenant has corrected the error.

unfair, or improper means; and (4) the defendant's acts injured the relationship." *Catskill Dev., LLC v. Park Place Ent. Corp.*, 547 F.3d 115, 132 (2d Cir. 2008). This tort "is a difficult claim to sustain, with requirements more demanding than those for interference with the performance of an existing contract." *LuxSoma LLC v. Leg Res., Inc.*, 289 F. Supp. 3d 514, 525 (S.D.N.Y. 2018) (brackets and citation omitted); *accord Catskill Dev., LLC*, 547 F.3d at 132.

To satisfy the element of "business relations with a third party," a plaintiff must "identify specific business entities with which [it] had business relationships." *Katz v. Travelers*, 241 F. Supp. 3d 397, 408 (E.D.N.Y. 2017) (citing cases). Spring Scaffolding's counterclaims name eight of its existing sidewalk shed and/or scaffolding customers to which Urban Intelligence sent letters accusing Spring Scaffolding of trade dress and patent infringement. Am. Answer & Counterclaims ¶¶ 91–93. Spring Scaffolding has thus sufficiently pleaded this element.

However, Spring Scaffolding fails to plausibly allege any injury to its relationship with these eight customers. "Where 'the underlying business relations remained undisturbed,' a claim for tortious interference is 'fatally defective.'" *RFP LLC v. SCVNGR, Inc.*, 788 F. Supp. 2d 191, 198 (S.D.N.Y. 2011) (quoting *PPX Enters., Inc. v. Audiofidelity Enters., Inc.*, 818 F.2d 266, 270 (2d Cir. 1987)). "Interference that does not rise to the level of a breach of agreement or severance of the relationship does not amount to an injury sufficient to make a tortious interference claim." *Ibid.*; *see* Restatement (Third) of Torts: Liability for Economic Harm § 18 cmt. d (Am. L. Inst. 2020) ("[T]he plaintiff must prove that the defendant's wrongful act made a necessary contribution to the plaintiff's loss, typically by convincing a third party not to do business with the plaintiff.").

Spring Scaffolding has not alleged any injury to its relationship with the eight customers who received Urban Intelligence's letters. Although it alleges that some of its customers were nervous about the prospect of litigation from Urban Intelligence, Am. Answer & Counterclaims

¶ 130, Spring Scaffolding never alleges, for example, that any of these customers canceled existing orders, or declined new purchases that they otherwise would have made, as a result of Urban Intelligence's letters.  Dismissal of this claim is thus warranted.  *See, e.g.*, *Ritani, LLC v. Aghjayan*, 880 F. Supp. 2d 425, 452 (S.D.N.Y. 2012) (dismissing claim where plaintiff failed to allege "that, as a result of [the defendant's] actions, . . . any of [plaintiff's] customers did not buy from [plaintiff], or that any order was canceled or that it had an actual, legitimate expectation as to their further patronage); *Insight Glob., LLC v. Wenzel*, No. 17-CV-8323 (PGG), 2018 WL 11318728, at *6 (S.D.N.Y. Aug. 27, 2018) (dismissing claim where plaintiff "has not pled facts demonstrating that it lost business from any customer as a result of Defendants' alleged 'interference'"); *Equibal, Inc. v. 365 Sun LLC*, No. 21-CV-6254 (VB), 2023 WL 2870620, at *4 (S.D.N.Y. Apr. 10, 2023) (dismissing counterclaim where defendants "fail[ed] to plead facts demonstrating they lost business due to, or that their business was otherwise harmed by, plaintiff's purported interference").

Spring Scaffolding cites two cases to show that it has sufficiently pleaded injury.  Neither is analogous.  In *Josie Maran Cosmetics, LLC v. Shefa Group LLC*, an Amazon seller brought a claim for tortious interference with business relations based on allegedly false reports of trademark infringement made by a manufacturer to Amazon.  *See* 624 F. Supp. 3d 281, 284–85, 293 (E.D.N.Y. 2022).  The court found the injury element adequately pleaded where the claimant alleged that its store had been temporarily suspended by Amazon, resulting in "lost revenue resulting from suspension and disruption of its relationship and contract with Amazon."  *See id.* at 293–95.  Spring Scaffolding has not pleaded that any of its customers took any particular action at all in response to Urban Intelligence's letters, much less that it lost revenue or had its contracts with them otherwise disrupted.  *PKG Group, LLC v. Gamma Croma, S.p.A.*, 446 F. Supp. 2d 249

(S.D.N.Y. 2006), is even less relevant.  Plaintiff cites this case for the quote that false statements which "covertly undercut [plaintiff's] image and reputation" with specific customers served to state a tortious interference claim ("albeit barely," the *PKG Group* court notes).  *See id.* at 251–52; Spring Scaffolding Opp'n to Mot. to Dismiss 12–13 (Dkt. #102).  But *PKG Group* did not discuss the injury element of tortious interference at all; Spring Scaffolding's cited quote comes from an analysis of whether the plaintiff had adequately alleged the third element of "dishonest, unfair, or improper means."  *See PKG Grp.*, 446 F. Supp. 2d at 251–52.  A review of the *PKG Group* complaint shows that injury was not in question: the plaintiff, a makeup distributor, had alleged specific harms to its relationship with several customer retailers.  For example, as a result of defendants' efforts, one retailer switched distributors, causing plaintiff's sales with that retailer to fall "to almost zero."  Am. Compl. ¶¶ 38, 41, *PKG Group, LLC v. Gamma Croma, S.p.A.*, 446 F. Supp. 2d 249 (S.D.N.Y 2006), 2006 WL 2307311.[2]  Another retailer placed plaintiff on "probation."  *Id.* ¶¶ 53–54.  Yet another would-be customer decided to purchase a product line from a competitor, rather than from plaintiff.  *Id.* ¶¶ 56–59.  Spring Scaffolding has not alleged any comparable injuries to its relationship with its customers.

Finally, to the extent Spring Scaffolding attempts to rely not on any specific economic injury but rather on generalized allegations about reputational damage among the wider scaffolding industry, *see* Spring Scaffolding Opp'n to Mot. to Dismiss 13, Am. Answer & Counterclaims ¶ 131, the Second Circuit has explained that "New York law considers claims sounding in tort to be defamation claims where those causes of action seek damages only for injury to reputation, or where the entire injury complained of by plaintiff flows from the effect on his

---

[2] As a document filed in another court, the Court may take judicial notice of this complaint "to determine what the document[] stated," though not "to prove the truth of [its] contents."  *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991).

reputation," *Hengjun Chao v. Mount Sinai Hosp.*, 476 F. App'x 892, 895 (2d Cir. 2012) (ellipsis, brackets, and citation omitted); *cf. Glob. Supplies NY, Inc. v. Electrolux Home Prods., Inc.*, No. 21-674, 2022 WL 815795, at *2 (2d Cir. Mar. 18, 2022) (comparing allegation that "a specific business relationship has been harmed," which "suggests that the claim is substantively for tortious interference," with "an allegation of harm to professional reputation that had an indirect effect on the ability to form business relationships," which "suggests that a claim sounds in defamation") (quotation marks, emphases, ellipses, and citations omitted)).   Courts accordingly routinely dismiss claims for tortious interference as duplicative of defamation claims where a plaintiff's only alleged injury is generalized reputational harm.  *See, e.g.*, *Katz*, 241 F. Supp. 3d at 407; *Restis v. Am. Coal. Against Nuclear Iran, Inc.*, 53 F. Supp. 3d 705, 725–26 (S.D.N.Y. 2014).  Spring Scaffolding thus may not rely on generalized allegations of reputational damage to sustain its tortious interference claim.

## CONCLUSION

For the foregoing reasons, Urban Intelligence's motion to dismiss Spring Scaffolding's counterclaims seeking declaratory judgments related to the three design patents held by Urban Intelligence (Amended Counterclaims VII–XII) and the counterclaim for tortious interference with prospective economic advantage (Amended Counterclaim I) is granted.

SO ORDERED.

   /s/  Rachel Kovner
   RACHEL P. KOVNER
   United States District Judge

Dated: March 31, 2025
       Brooklyn, New York